## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## DENVER DIVISION

Civil Action No. _____

Benjamin Nagel,
      On behalf of himself and those similarly situated

      Plaintiff(s),

v.

DFL Pizza, LLC, Tri-City Pizza, Inc., Minuteman Pizza, Ltd., Pinnacle Pizza, Inc., Jay Feavel, Charles S. Dolan, John Doe Corp. 1-10, John Doe 1-10

      Defendant(s).

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

1.    Plaintiff Benjamin Nagel, on behalf of himself and similarly-situated individuals, brings this action against DFL Pizza, LLC, Tri-City Pizza, Inc., Minuteman Pizza, Ltd., Pinnacle Pizza, Inc., Jay Feavel, Charles S. Dolan, John Doe Corp. 1-10, and John Doe 1-10 ("Defendants") based on Defendants' compensation and reimbursement policies at the Defendants' Domino's Pizza stores.

2.    Defendants own and operate a group of over 30 Domino's Pizza franchise stores in Colorado, Oklahoma, and Wyoming (the "DFL Domino's stores").

3.    Plaintiff and the delivery drivers they seek to represent are Defendants' delivery drivers.

4.     Defendants have repeatedly and willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, et seq., by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

5.     Defendants have also repeatedly and willfully violated the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq., by taking unauthorized deductions from the delivery drivers wages and failing to pay all wage and compensation earned by the delivery drivers in a timely manner.

6.     Defendants have also violated Colorado wage and hour law by failing to provide meal breaks and rest breaks to delivery drivers at DFL Pizza.

## I.   Jurisdiction and Venue

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim herein occurred in this district.

## II.  Parties

**Plaintiff**

**Benjamin Nagel**

10.     Plaintiff Benjamin Nagel worked for Defendants in Arvada, Colorado.

11.     Plaintiff is an "employee" of Defendants as defined in the FLSA, the CMWA, and the CWCA.

12.     Plaintiff has given written consent to join this action.

**Defendants**

**DFL Pizza, LLC**

13.     Defendant DFL Pizza, LLC is a domestic limited liability company with its principal place of business at 5804 Ward Road, Unit B, Arvada, CO 80004.

14.     The Domino's Pizza stores owned and operated by DFL Pizza, LLC are also referred to as the "Team Say Yes" Domino's Pizza stores.

15.     Upon information and belief, DFL Pizza, LLC owns and operates Domino's Pizza stores in Colorado, Wyoming, and Oklahoma.

16.     DFL Pizza, LLC is owned and operated by Charles S. Dolan and Jay Feavel.

17.     DFL Pizza, LLC is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the DFL Domino's stores.

18.     DFL Pizza, LLC is the entity that appears on Plaintiff's paystubs for work he completed for Defendants.

19.     DFL Pizza, LLC may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

20.     DFL Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     Upon information and belief, DFL Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all

of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

22.     DFL Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     At all relevant times, DFL Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     DFL Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

25.     At all relevant times, DFL Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     DFL Pizza, LLC's gross revenue exceeds $500,000 per year.

**Tri-City Pizza, Inc.**

27.     Defendant Tri-City Pizza, Inc. is a domestic corporation with its principal place of business at 2649 E. Mulberry, Unit 5, Fort Collins, CO 80524.

28.     The Domino's Pizza stores owned and operated by Tri-City Pizza, Inc. are also referred to as the "Team Say Yes" Domino's Pizza stores.

29.     Upon information and belief, Tri-City Pizza, Inc. owns and operates Domino's Pizza stores in Colorado, Wyoming, and Oklahoma.

30.     Tri-City Pizza, Inc. is owned and operated by Charles S. Dolan and Jay Feavel.

31.     Tri-City Pizza, Inc. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the DFL Domino's stores.

32.     Tri-City Pizza, Inc. may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

33.     Tri-City Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Upon information and belief, Tri-City Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

35.     Tri-City Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

36.     At all relevant times, Tri-City Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.     Tri-City Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

38.     At all relevant times, Tri-City Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

39.     Tri-City Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Pinnacle Pizza, Inc.**

40.     Defendant Pinnacle Pizza, Inc. is a domestic corporation with its principal place of business at 14338 W. 56th Way, Arvada, CO 80002.

41.     The Domino's Pizza stores owned and operated by Pinnacle Pizza, Inc. are also referred to as the "Team Say Yes" Domino's Pizza stores.

42.     Upon information and belief, Pinnacle Pizza, Inc. owns and operates Domino's Pizza stores in Colorado, Wyoming, and Oklahoma.

43.     Pinnacle Pizza, Inc. is owned and operated by Charles S. Dolan and Jay Feavel.

44.     Pinnacle Pizza, Inc. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the DFL Domino's stores.

45.     Pinnacle Pizza, Inc. may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

46.     Pinnacle Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

47.     Upon information and belief, Pinnacle Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

48.     Pinnacle Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

49.     At all relevant times, Pinnacle Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring,

firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

50.     Pinnacle Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

51.     At all relevant times, Pinnacle Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

52.     Pinnacle Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Minuteman Pizza, Ltd.**

53.     Defendant Minuteman Pizza, Ltd. is a domestic corporation with its principal place of business at 2812 Calendar Ct., Fort Collins, CO 80526.

54.     The Domino's Pizza stores owned and operated by Minuteman Pizza, Ltd. are also referred to as the "Team Say Yes" Domino's Pizza stores.

55.     Upon information and belief, Minuteman Pizza, Ltd. owns and operates Domino's Pizza stores in Colorado, Wyoming, and Oklahoma.

56.     Minuteman Pizza, Ltd. is owned and operated by Charles S. Dolan and Jay Feavel.

57.     Minuteman Pizza, Ltd. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the DFL Domino's stores.

58.     Minuteman Pizza, Ltd. may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

59.     Minuteman Pizza, Ltd. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

60.     Upon information and belief, Minuteman Pizza, Ltd. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

61.     Minuteman Pizza, Ltd. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

62.     At all relevant times, Minuteman Pizza, Ltd. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

63.     Minuteman Pizza, Ltd. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

64.     At all relevant times, Minuteman Pizza, Ltd. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

65.     Minuteman Pizza, Ltd.'s gross revenue exceeds $500,000 per year.

**Jay Feavel**

66.     Jay Feavel is an owner and operator of DFL Pizza, LLC, Tri-City Pizza, Inc., Pinnacle Pizza, Inc., and Minuteman Pizza, Ltd. (the "Defendant entities").

67.     Jay Feavel is a person who has entered into a franchise agreement with Domino's to operate the DFL Domino's stores.

68.     Jay Feavel is the president and CEO of some or all of the Defendant entities.

69.     Jay Feavel may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

70.     Jay Feavel is individually liable to the DFL Domino's stores delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado law because he owns and operates the DFL Domino's stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the DFL Domino's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

71.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had financial control over the operations at each of the DFL Domino's stores.

72.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has a role in significant aspects of the DFL Domino's stores' day to day operations.

73.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had control over the DFL Domino's stores' pay policies.

74.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had power over personnel and payroll decisions at the DFL Domino's stores, including but not limited to influence of delivery driver pay.

75.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had the power to hire, fire and discipline employees, including delivery drivers at DFL Domino's stores.

76.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had the power to stop any illegal pay practices that harmed delivery drivers at the DFL Domino's stores.

77.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had the power to transfer the assets and liabilities of the DFL Domino's stores.

78.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had the power to declare bankruptcy on behalf of the DFL Domino's stores.

79.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel as had the power to enter into contracts on behalf of each of the DFL Domino's stores.

80.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel has had the power to close, shut down, and/or sell each of the DFL Domino's stores.

81.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jay Feavel had authority over the overall direction of each of DFL Domino's stores and was ultimately responsible for their operations.

82.     The DFL Domino's stores function for Jay Feavel's profit.

83.     Jay Feavel has influence over how the DFL Domino's stores can run more profitably and efficiently.

**Charles S. Dolan**

84.     Charles S. Dolan is an owner and operator of the Defendant entities.

85.     Charles S. Dolan is a person who has entered into a franchise agreement with Domino's to operate the DFL Domino's stores.

86.     Charles S. Dolan is the president and CEO of some or all of the Defendant entities.

87.     Charles S. Dolan may command where, when, and how much labor is performed by the delivery drivers at the DFL Domino's stores.

88.     Charles S. Dolan is individually liable to the DFL Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Colorado law because he owns and operates the DFL Domino's stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the DFL Domino's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

89.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had financial control over the operations at each of the DFL Domino's stores.

90.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has a role in significant aspects of the DFL Domino's stores' day to day operations.

91.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had control over the DFL Domino's stores' pay policies.

92.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had power over personnel and payroll decisions at the DFL Domino's stores, including but not limited to influence of delivery driver pay.

93.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had the power to hire, fire and discipline employees, including delivery drivers at DFL Domino's stores.

94.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had the power to stop any illegal pay practices that harmed delivery drivers at the DFL Domino's stores.

95.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had the power to transfer the assets and liabilities of the DFL Domino's stores.

96.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had the power to declare bankruptcy on behalf of the DFL Domino's stores.

97.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan as had the power to enter into contracts on behalf of each of the DFL Domino's stores.

98.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan has had the power to close, shut down, and/or sell each of the DFL Domino's stores.

99.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Charles S. Dolan had authority over the overall direction of each of DFL Domino's stores and was ultimately responsible for their operations.

100.    The DFL Domino's stores function for Charles S. Dolan's profit.

101.    Charles S. Dolan has influence over how the DFL Domino's stores can run more profitably and efficiently.

**John Doe Corp. 1-10**

102.    Upon information and belief, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and state law.

103.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Individuals 1-10**

104.    Upon information, there are other Defendants who own an interest and/or have operational control over the DFL Domino's stores that also qualify as Plaintiff's "employer" under the FLSA and state law.

105.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## III.   Facts

### Class-wide Factual Allegations

106.    During all or some of the relevant time period, Defendants operated the DFL Domino's stores.

107.    Upon information and belief, there are over 30 DFL Domino's stores in Colorado, Oklahoma, and Wyoming.

108.    The primary function of the DFL Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

109. Some or all of the DFL Domino's stores employ delivery drivers (the "DFL Domino's delivery drivers" or "delivery drivers").

110. All delivery drivers employed at the DFL Domino's stores over the last six years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

111. All of the DFL Domino's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

112. The DFL Domino's delivery drivers' non-tipped job duties were not related to their tipped job duties.

113. The DFL Domino's delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or cutting pizzas, folding pizza boxes, doing dishes, cleaning around the store, and completing any other tasks necessary for the operation of the restaurant.

114. The DFL Domino's delivery drivers have been paid a tipped wage rate for hours worked on the road making deliveries.

115. The DFL Domino's delivery drivers have been paid at or close to minimum wage for the hours they work inside the store.

116. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

117. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, insurance, financing, cell phone costs, GPS and data charges, and other equipment necessary for delivery drivers to complete their job duties.

118.   Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, licensing, and registration, and incur cell phone and data charges all for the primary benefit of Defendants.

119.   Defendants reimbursed the delivery drivers on either a per-delivery or per-mile basis that was not sufficient to cover all of the delivery drivers' expenses.

120.   The DFL Domino's stores do not track or maintain records of the actual expenses of the delivery drivers.

121.   The DFL Domino's stores do not reimburse delivery drivers for their actual expenses.

122.   The DFL Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

123.   The DFL Domino's stores have not reimbursed delivery drivers at a reasonable approximation of the drivers' expenses.

124.   The DFL Domino's stores' reimbursement methodology does not fully reimburse delivery drivers for their expenses.

125.   The DFL Domino's stores did not keep adequate records of the methodology and data they relied upon in determining their reimbursement rates.

126.   According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.   2015: 57.5 cents/mile
    b.   2016: 54 cents/mile
    c.   2017: 53.5 cents/mile
    d.   2018: 54.5 cents/mile
    e.   2019: 58 cents/mile
    f.   2020: 57.5 cents/mile
    g.   2021: 56 cents/mile

127.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Colorado law.

128.    The delivery drivers' unreimbursed expenses amount to unauthorized deductions under the CWCA and CMWA.

129.    Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

130.    All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

131.    Regardless of the precise amount of the reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

132.    Because Defendants paid their delivery drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

133.    By failing to adequately reimburse for delivery-related expenses, Defendants have taken unauthorized deductions from the wages of the delivery drivers.

134.    By failing to adequately reimburse for delivery-related expenses Defendants have failed to provide wages and/or compensation earned by the delivery drivers in a timely manner.

135.    Defendants did not permit delivery drivers to take an uninterrupted and duty-free meal break of at least 30 minutes for any shift that exceeds five consecutive hours of work.

136.    Defendants did not permit delivery drivers to take a 10-minute rest break for each 4 hours of work, or major fractions thereof.

137.    During all or some of the relevant time period, Defendants have failed to properly claim a tip credit from wages of their minimum wage delivery drivers because, after deducting unreimbursed expenses, Defendants failed to pay the delivery drivers the tipped wage rate they promised they would pay. *See* 29 C.F.R. § 531.59.

138.    Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's Pizza stores, have taken unauthorized deductions from the delivery drivers' wages, have failed to pay the delivery drivers all wages due, have failed to permit delivery drivers to take meal and rest breaks as required by law, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

139.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries—they do not have to incur the expense themselves.

140.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

141.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

142.    Defendants have been sued for these same under-reimbursement claims on multiple occasions in the past.

143.    On July 10, 2019, Judge Raymond Moore approved an FLSA collective action settlement in a case involving all of the Defendant entities. The case resolved the claims of 215 FLSA opt in Plaintiffs for $325,000. *Wilson v. DFL Pizza, LLC, et al*., No. 1:18-cv-109, Doc. 69 (D. Colo. Jul. 10, 2019).

144.    In early 2021, it appears 43 delivery drivers who worked for Pinnacle Pizza, Inc. resolved their claims with Pinnacle Pizza, Inc. for $76,000. *Parnell v. Pinnacle Pizza, Inc*., No. 5:20-cv-237, Doc. 44 (D. Okla. Feb. 11, 2021).

145.    To the extent any DFL Domino's delivery drivers (1) opted in to the one or both of the cases discussed in the preceding two paragraphs, and (2) stopped worked before the settlement period that applies to the case into which they have opted in, those delivery drivers would not be eligible to join the present case. However, to the extent any delivery drivers did not opt in to the prior cases or continued working for Defendants after the close of the settlement period in those cases, they are eligible to take part in this case.

### Plaintiff's Individual Factual Allegations

146.    Benjamin Nagel worked as a delivery driver at one of Defendants' Domino's Pizza stores located in Arvada, Colorado from August 8, 2015 to July 20, 2018.

18

147.     Benjamin Nagel worked dual jobs—one where he delivered food and received tips, and another where he worked inside the store completing non-tipped duties.

148.     Benjamin Nagel was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for the hours he worked on the road completing deliveries.

149.     Plaintiff was paid $7.18 per hour for the hours he worked on the road making deliveries when he left his employment.

150.     Benjamin Nagel was paid Colorado minimum wage for the hours he worked inside the store.

151.     Benjamin Nagel was paid approximately $10.20 per hour for the hours he worked inside the store when he left his employment.

152.     Benjamin Nagel's inside job duties were not related to his delivery job duties.

153.     Benjamin Nagel's inside duties included taking phone orders, helping carryout customers, cleaning, cutting pizzas, and folding pizza boxes.

154.     Benjamin Nagel was reimbursed approximately $1.18 per delivery when he took only one delivery in a single "run," i.e., a single departure from the store to make a delivery.

155.     When Benjamin Nagel completed more than one delivery on a single "run," he was reimbursed approximately $.62 for the second and subsequent deliveries.

156.     Benjamin Nagel was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

157.     Benjamin Nagel was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance

and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary to complete his job duties.

158.    Benjamin Nagel purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

159.    Defendants did not track the actual expenses incurred by Benjamin Nagel.

160.    Defendants did not reimburse Benjamin Nagel based on his actual delivery-related expenses.

161.    Benjamin Nagel was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

162.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Benjamin Nagel.

163.    During Benjamin Nagel's employment with Defendants, Defendants have failed to adequately reimburse Benjamin Nagel for automobile and other job-related expenses.

164.    Benjamin Nagel regularly made approximately two to three deliveries per hour during the hours he worked as a delivery driver.

165.    Benjamin Nagel regularly drove about 5 miles per delivery.

166.    At 5 miles per delivery, this amounts to a reimbursement to Benjamin Nagel of approximately $.24 per mile when he completed a single delivery per run.

167.    In 2018, for example, the IRS business mileage reimbursement was $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.

http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased Plaintiff's net wages by approximately $.305 ($.545 - $.24) per mile. Considering his estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $1.525 per delivery ($.305 x 5 miles).

168.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Benjamin Nagel has "kicked back" to Defendants approximately $4.575 per hour ($1.525 per delivery x 2.5 deliveries per hour).

169.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Benjamin Nagel minimum wage as required by law.

170.    Defendants did not properly claim a tip credit from the wages of Benjamin Nagel because they did not actually pay him the wages they promised they would pay him, after deducting for automobile expenses.

171.    Benjamin Nagel did not authorize Defendants to deduct a portion of his wages to cover automobile expenses that served Defendants' benefit.

172.    Benjamin Nagel regularly worked shifts that last between 8 and 12 hours.

173.    Defendants did not permit Benjamin Nagel to take an uninterrupted and duty-free 30-minute meal break during shifts that exceeded 5 hours.

174.    Defendants did not permit Benjamin Nagel to take 10-minute rest breaks for each 4 hours of work, or any major fraction thereof.

### Collective Action Allegations

175.    Plaintiff brings the First and Second Count against the DFL Defendants on behalf of himself and

All similarly situated current and former delivery drivers employed at the DFL Domino's stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

176.    At all relevant times, Plaintiff and the FLSA collective class have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA collective class minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA collective class.

177.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

178.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and time and a half overtime wages for hours worked in excess of 40 per week.

179.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

180.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

181.    The FLSA collective class members are readily identifiable and ascertainable.

182.    For the purpose of notice and other purposes related to this action, the FLSA collective class members' names and contact information are readily available from Defendants' records.

183.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA collective classes, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

184.   Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Counts, pursuant to Fed. R. Civ. P. 23, on behalf of himself and

> All similarly situated current and former delivery drivers employed at the DFL Domino's stores owned, operated, and controlled by Defendants in Colorado, during the six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter.

185.   The Rule 23 Class asserts CMWA and CWCA claims on behalf of delivery drivers employed at the DFL Domino's stores in Colorado from the date three years prior to the filing of the original complaint through the date of final judgment.

186.   The Rule 23 Class asserts a claim for unjust enrichment and a claim for failure to provide meal and rest breaks on behalf of delivery drivers employed at the DFL Domino's stores in Colorado from the date six years prior to the filing of the original complaint through the date of final judgment.

187.   Excluded from the Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

188.   The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

189.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

190.    For the purposes of notice and other purposes related to this action, the names and contact information of Rule 23 Class Members are readily available from Defendants.

191.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

192.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

193.    There are more than 50 Rule 23 Class members.

194.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

195.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly claim a tip credit, failing to pay overtime, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, being unjustly enriched by their automobile policy, and failing to provide meal and rest breaks.

196.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Colorado wage law.

197.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class

members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

198.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

199.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

200.    Plaintiff are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

201.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

202.    Upon information and belief, Defendants and other employers throughout the state violate the Colorado wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims

because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

203.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

204.    Common questions of law and fact exist as to the Rule 23 Classes that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.   Whether Defendants required Plaintiff and the Rule 23 Class members to drive their own cars for work;

    c.   Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

    d.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

    e.   Whether Defendants recorded Plaintiff and the Rule 23 Class members' actual expenses;

    f.   Whether Defendants' reimbursement methodology reasonably approximated the automobile expenses of Plaintiff and the Rule 23 Class members;

    g.   Whether Defendants properly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 each workweek;

h.   Whether Defendants took deductions from the wages paid to Plaintiff and the Rule 23 Class without authorization;

i.   Whether Defendants paid Plaintiff and the Rule 23 Class all wages due;

j.   Whether Defendants permitted Plaintiff and the Rule 23 Class to take meal breaks as required by law;

k.   Whether Defendants permitted Plaintiff and the Rule 23 Class to take rest breaks as required by law;

l.   Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

m.   The nature and extent of class-wide injury and the measure of damages for those injuries.

205.   In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## IV.   Causes of Action

### Count 1
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

206.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

207.   Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

208.   Plaintiff and the FLSA collective class members worked in dual jobs—one that produced tips, and another that did not.

209.    Defendants paid Plaintiff and the FLSA collective class members at, close to, or below (based on a tip credit) minimum wage for all hours worked.

210.    Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA collective class members for said expenses.

211.    Defendants have failed to properly claim a tip credit from their wages, because they did not pay the wage rate they promised they would pay.

212.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

213.    Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay minimum wage as required by law.

214.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

215.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

216.    Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than time and a half overtime wages for hours worked in excess of 40 hours per week.

217.    Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA collective class members for said expenses.

218.    When Plaintiff and the FLSA collective class members worked overtime hours, they were under-reimbursed in the same way and according to the same policies as they were when they worked regular hours.

219.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

220.    Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay overtime as required by law.

221.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### <u>Count 3</u>
**Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq*. and 7 CCR 1103-1:1, et seq.,**
**(On Behalf of Plaintiff and the Rule 23 Class)**

222.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

223.    Defendants have at all times been an "employer" of Plaintiff and all delivery drivers within the meaning of the CMWA.

224.    Defendants failed to pay Plaintiff and the delivery drivers all minimum wages owed.

225.   Defendants took unauthorized deductions from the wages of Plaintiff and the delivery drivers.

226.   Defendants conduct and practices, as described herein, were willful and intentional.

227.   By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

<u>**Count 4**</u>
**Colorado Wage Claim Act—C.R.S. 8-4-101, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

228.   Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

229.   The Defendant entities have at all times been an "employer" of Plaintiff and the delivery drivers within the meaning of the CWCA.

230.   During all or some of the relevant time period, Defendants Jay Feavel and Charles S. Dolan have each been an "employer" of Plaintiff and the delivery drivers with the meaning of the CWCA.

231.   Defendants failed to pay Plaintiff and the delivery drivers in a timely manner as required by C.R.S. 8-4-103(1).

232.   Defendants have taken unauthorized deductions from the wages of Plaintiff and the delivery drivers by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

233.   Defendants conduct and practices, as described herein, were willful and intentional.

234.   By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for unpaid wages, unreimbursed expenses, liquidated damages, costs,

reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

### Count 5
### 7 Colo. Code Regis. § 1103-1, *et seq.*
### Unpaid Meal Breaks
### (On Behalf of Plaintiff and the Rule 23 Class)

235.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

236.    The delivery drivers were entitled to uninterrupted and duty-free meal breaks for a period of 30 minutes during each shift they worked that exceeds 5 consecutive hours.

237.    Defendants did not allow delivery drivers to take meal breaks.

238.    Defendants conduct and practices, as described herein, were willful and intentional.

239.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for 30 minutes in unpaid wages for each shift worked that exceeded 5 hours, , liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

### Count 6
### 7 Colo. Code Regis. § 1103-1, *et seq.*
### Unpaid Rest Breaks
### (On Behalf of Plaintiff and the Rule 23 Class)

240.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

241.    The delivery drivers were entitled to rest breaks for a period of 10 minutes for each four hours of work, or major fractions thereof.

242.    Defendants did not allow delivery drivers to take rest breaks.

243.    During shifts lasting between 2 and 6 hours, the delivery drivers were entitled to at least one 10-minute break.

244.    During shifts lasting between 6 and 10 hours, the delivery drivers were entitled to at least two 10-minute breaks.

245.    During shifts last between 10 and 14 hours, the delivery drivers were entitled to at least three 10-minute breaks.

246.    Defendants conduct and practices, as described herein, were willful and intentional.

247.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for at least 10 minutes in unpaid wages for each shift exceeding 2 hours, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

## Count 7
### Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Class)

248.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

249.    The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

250.    Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

251.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

252.    Plaintiff and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Colorado state law.

D.     Designation of Plaintiff as representative of the Rule 23 Class of delivery drivers and counsel of record as Class Counsel.

E.     Declaratory judgment that the practices complained of herein are unlawful under the Colorado Revised Statutes.

F.     An award of unpaid minimum wages, overtime wages, unreimbursed expenses, unlawful deductions, unpaid meal and rest breaks, and liquidated damages due under Colorado wage laws.

G.     An award of equitable restitution and damages for unjust enrichment.

H.     An award of prejudgment and post-judgment interest.

I.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

J.      Such other legal and equitable relief as the Court deems appropriate.

              Respectfully submitted,

              <u>/s/ Andrew P. Kimble</u>
              Andrew R. Biller
              Andrew P. Kimble
              BILLER & KIMBLE, LLC
              8044 Montgomery Road, Suite 515
              Cincinnati, OH 45236
              Telephone: (513) 202-0710
              abiller@billerkimble.com
              akimble@billerkimble.com

              **ATTORNEYS FOR PLAINTIFF**

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

<u>/s/ Andrew Kimble</u>
Andrew Kimble